Marshall, Ch. J.,
delivered the opinion of the court. — The question in this case is, whether the United States, as holders of a protested bill of exchange, which has been negotiated in the ordinary course of trade, are entitled to be preferred to the general creditors, where the debtor becomes bankrupt ? The claim to this preference is founded on the 5th section of the act, entitled “ an act to provide more effectually for the settlement of accounts between the United States and receivers of public money.” (1 U. S. Stat. 515.)
*230 The section is in these words: “And be it further enacted, that where any revenue officer, or other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, or where the estate of any deceased debtor, in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied ; and the priority hereby established shall be deemed to extend, as well to cases in which a debtor, not having sufficient property to pay all his debts, shall make a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor shall be attached by process of law, as to cases in which an act of legal bankruptcy shall be committed.”
That these words, taken in their natural and usual sense, would embrace the case before the court, seems not to be controverted. “ Any revenue officer, or other person, hereafter becoming indebted. to the United States by bond or otherwise,” is a description of persons, which, if neither explained nor restricted by other words or circumstances, would comprehend every debtor of the public, however his debt might have been contracted.
*But other parts of the act involve this question in much embarrassment. It is undoubtedly a well-established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole. It is also true, that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain j in which case it must be obeyed. On the abstract principles which govern courts in construing legislative acts, no difference of opinion can exist. It is. only in the application of those principles, that the difference discovers itself.
As the enacting clause in this case would plainly give the United States the preference they claim, it is incumbent on those who oppose that preference, to show an intent varying from that which the words import. In doing this, the whole act has been critically examined ; and it has been contended, with great ingenuity, that every part of it demonstrates the legislative mind to have been directed towards a class of debtors, entirely different from those who become so by drawing or indorsing bills, in the ordinary course of business.
The first part which has been resorted to is the title. On the influence which the title ought to have in construing the enacting clauses, much has-been said ; and yet 'it is not easy to discern the point of difference between the opposing counsel in this respect. Neither party contends, that the title of an act can control plain words in the body of the statute ; and neither denies that, taken with other parts, it may assist in removing ambiguities. "Where the intent is plain, nothing is left to construction. Where the mind’ labors to discover the design of the legislature, it seizes everything from which aid can be derived ; and in such case, the title claims a degree of notice, and will have its due share of consideration.[1]
The title of the act is unquestionably limited to “receivers *of" public money ;” a term which, undoubtedly, excludes the defendants. *231 in the present case. The counsel for the defendants have also completely succeeded in demonstrating, that the first four sections of this act relate only to particular classes of debtors, among whom the drawer and indorser of a protested bill of exchange would not be comprehended. Wherever general words have been used in these sections, they are restrained by the subject to which they relate, and by other words, frequently in the same sentence, to particular objects, so as to make it apparent, that they were employed by the legislature in a limited sense. Hence, it has been argued, with great strength of reasoning, that the same restricted interpretation ought to be given to the fifth section likewise.
If the same reason for that interpretation exists ; if the words of the act, generally, or the particular provisions of this section, afford the same reason for limiting its operation, which is afforded with respect to those which precede it, then, its operation must be limited to the same objects.
The 5th section relates entirely to the priority claimed by the United States in the payment of debts. On the phraseology of this act, it has been observed, that there is a circuity of expression, which would not have been used, if the intention of the legislature had been to establish its priority in all cases whatever. Instead of saying, “ any revenue officer, or other person hereafter becoming indebted to the United States,” the natural mode of expressing such an intent would have been, “ any person indebted to the United States ;” and hence it has been inferred, that debtors of a particular description only were in the mind of the legislature. It is true, the mode of expression which has been suggested, is at least as appropriate as that which has been used ; but between the two, there is no difference of meaning, and it cannot be pretended, that the natural sense of words is to be disregarded, because that which they import might have been better, or more directly expressed.
*As a branch of this argument, it has also been said, that the description commences with the very words which are used in the beginning of the first section ; and from that circumstance, it has been inferred, that the same class of cases was still in view. The commencing words of each section are, “ Any revenue officer, or other person.” But the argument drawn from this source, if the subject be pursued further, seems to operate against the defendants. In the first section, the words are, “ any revenue officer, or other person accountable for public money.” With this expression completely in view, and having used it in part, the description would probably have been adopted throughout, had it been the intention of the legislature to describe the same class of debtors. But it is immediately dropped, and more comprehensive words are employed. For persons “accountable for public money,” persons “hereafter becoming indebted to the United States, by bond or otherwise ” are substituted. This change of language strongly implies an intent to change the object of legislation.
But the great effort on the part of the defendants is to connect the fifth with the four preceding sections ; and to prove that as the general words in those sections are restricted to debtors of a particular description, the general words of the 5th section ought also to be restricted to debtors of the same description. On this point, lies the stress of the cause.
In the analysis of the foregoing parts of the act, the counsel for the defendants have shown, that the general terms which have been used are uni *232 formly connected with other words in the same section, and frequently in the same sentence, which necessarily restrict them. They have also shown, that the provisions of those parts of the act are of such a nature that the words, taking the natural import of the whole sentence together, plainly form provisions only adapted to a class of cases which those words describe, if used in a limited sense. It may be added, that the first four sections of the act are connected with each other, and plainly contain provisions on the same subject. They all relate to the *mode of proceeding on suits instituted in courts, and each section regulates a particular branch of that proceeding. "Where the class of suits is described in the first section, it is natural to suppose, that the subsequent regulations respecting suits apply to those which have been described.
The first section directs that suits shall be instituted against revenue officers, and other persons accountable for public money, and imposes a penalty on delinquents, where a suit shall be commenced and prosecuted to judgment. The second section directs that certain testimony shall be admitted at the trial of the cause. The third section prescribes the condition under which a continuance may be granted : and the fourth section respects the testimony which may be produced by the defendant. These are all parts of the same subject; and there is strong reason, independent of the language of the act, to suppose that the provisions respecting them were designed to be co-extensive with each other.
But the fifth section is totally unconnected with those which precede it. Regulations of a suit in court no longer employ the mind of the legislature. The preference of the United States to other creditors becomes the subject of legislation ; and as this subject is unconnected with that which had been disposed of in the foregoing sections, so is the language employed upon it, without reference to that which had been previously used. If this language was ambiguous, all the means recommended by the counsel for the defendants would be resorted to, in order to remove the ambiguity. But it appears, to the majority of the court, to be too explicit to require the application of those principles which are useful in doubtful cases.
The mischiefs to result from the construction on which the United States insist, have been stated as strong motives for overruling that construction. That the consequences *are to be considered in expounding laws, where the intent is doubtful, is a principle not to be controverted ; but it is also true, that it is a principle which must be applied with caution, and which has a degree of influence dependent on the nature of the case to which it is applied. Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness, to induce a court of justice to suppose a design to effect such objects. But where only a political regulation is made, which is inconvenient, if the intention of the legislature be expressed in terms which are sufficiently intelligible, to leave no doubt in the mind, when the words are taken in their ordinary sense, it would be going a great way, to say that a constrained interpretation must be put upon them, to avoid an inconvenience which ought to have been contemplated in the legislature, when the act was passed, and which, in their opinion, was probably overbalanced by the particular advantages it was calculated to produce.
*233 Of the latter description of inconveniences are those occasioned by the act in question. It is for the legislature to appreciate them. They are not of such magnitude as to induce an opinion, that the legislature could not intend to expose the citizens of the United States to them, when words are used which manifest that intent.
On this subject, it is to be remarked, that no lien is created by this law. No bond fide transfer of property, in the ordinary course of business, is overreached. It is only a priority in payment, which, under different modifications, is a regulation in common use ; and this priority is limited to a particular state of things, when the debtor is living; though it takes effect, generally, if he be dead, (a)
Passing from a consideration of the act itself, and the consequences which flow from it, the counsel on each side have sought to strengthen their construction by other acts in pari materia. *The act of the 3d of March 1797, has been supposed to be a continuation of legislative proceeding on the subject which was commenced on the 3d of March 1795 (1 U. S. Stat. 441), by the act “for the more effectual recovery of debts due from individuals to the United States,” which relates exclusively to the receivers of public money. Admitting the opinion, that the act of 1797 was particularly designed to supply the defects of that of 1795, to be correct, it does not seem to follow, that a substantive and independent section, having no connection with the provisions made in 1795, should be restricted by it.
The act of 1795 contains nothing relative to the priority of the United States, and therefore, will not explain the 5th section of the act of 1797, which relates exclusively to that subject. But the act of 1797, neither in its title nor its enacting clauses, contains any words of reference to the act of 1795. The words which are supposed to imply this reference are, “to provide more effectually.” But these words have relation to the existing state of the law, on all the subjects to which the act of 1797 relates, not to those alone which are comprehended in the act of 1795. The title of the act of 1795 is also, “for the more effectual recovery of debts,” and consequently, refers to certain pre-existing laws. The act of 1797, therefore, may be supposed to have in view the act of 1795, when providing for the objects contemplated in that act; but must be supposed to have other acts in view, when providing for objects not contemplated in that act. As, therefore, the act of 1795 contains nothing respecting the priority of the United States, but is limited to provisions respecting suits in court, the act of 1797 may be considered in connection with that act, while on the subject of suits in court, but when on the subject of preference, must be considered in connection with acts which relate to the preference of the United States.
The first act on this subject passed on the 31st of July 1789, § 21, and gave the United States a preference only in the case of bonds for duties. *On the 4th of August 1790 (1 U. S. Stat. 169), an act was passed on the same subject with that of 1789, which repeals all former acts, and re-enacts, in substance, the 21st section, relative to the priority of the *234 United States. On the 2d of May 1792 (Ibid. 263), the priority previously given to the United States is transferred to the sureties on duty bonds, who-shall themselves pay the debt; and the oases of insolvency, in which this priority is to take place, are explained to comprehend the case of a voluntary assignment, and the attached effects of an absconding, concealed or absent debtor.
Such was the title of the United States to a preference in the payment of debts, previous to the passage of the act of 1797. It was limited to-bonds for the payment of duties on imported goods, and on the tonnage of vessels. An internal revenue had been established, and extensive transactions had taken place; in the course of which, many persons had necessarily become indebted to the United States. But no attempt to give them a preference in the collection of such debts had been made.
This subject is taken up in the 5th section of the act of 1797. The term “revenue officer,” which is used in that act, would certainly comprehend any persons employed in the collection of the internal revenue; yet it may be well doubted, whether those persons are contemplated in the foregoing sections of the act. They relate to a suit in court, and are perhaps restricted to those receivers of public money who have accounts on the books of the treasury. The head of the department, in each state, most probably accounts with the treasury, and the sub-collectors account with him. If this be correct, a class of debtors would be introduced into the 5th section, by the term “ revenue officer,” who are indeed within the title,, but not within the preceding enacting clauses of the law.
But passing over this term, the succeeding words seem, to the majority of the court, certainly to produce this effect. They are, “ or other person hereafter becoming indebted to the United States, by bond or otherwise.”' ^ se°ráon was designed to place *the collection of the internal revenue on the same footing of security with the external revenue,, as has been argued by one of the counsel for the defendants, a design so-reasonable, that it would naturally be attributed to the legislature, then the debtors for excise duties would be comprehended within it; yet those debtors cannot be brought within the title, or the previous enacting clauses of the bill. The 5th section, then, would introduce a new class of debtors, and if it does so, in any case, the act furnishes no principle which shall restrain the words of that section to every case to which they apply.
Three acts of congress have passed, subsequent to that under particular consideration, which have been supposed to bear upon the case. The first passed on the 11th of July 1798, and is entitled “an act to regulate and fix the compensation of the officers employed in collecting the internal revenues of the United States, and to insure more effectually the settlement of their accounts.” The 13th section of this act (1 U. S. Stat. 593) refers expressly to the provisions of the act of March 1797, on the subject of suits to be instituted on the bonds given by the officers collecting the internal revenue,, and shows conclusively, that in the opinion of the legislature, the first four-sections of that act did not extend to the case of those officers; consequently, if the 5th section extends to them, it introduces a class of debtors distinct from those contemplated in the clauses which respect suits in court.. The 15th section of this act takes up the subject which is supposed to be-contemplated by the 5th section of the act of 1797, and declares the debt *235 due from these revenue officers to the United States to he a lien on their real estates, and on the real estates of their sureties, from the institution of suit thereon. It can scarcely he supposed, that the legislature would have given a lien on the real estate, without providing for a preference out of the personal estate, especially, where there was no real estate, unless that, preference was understood to be secured by a previous law.
The same observation applies to a subsequent act of the same session,, for laying a direct tax. A lien is reserved *on the real estate of the collector, without mentioning any claim to preference out of his personal estate.
The last law which contains any provision on the subject of preference-passed on the 2d of March 1799. The 65th section of that act has been considered as repealing the 5th section of the act of 1797, or of manifesting-the limited sense in which it is to be understood. It must be admitted, that this section involves the subject in additional perplexity; but it is the opinion of the court, that on fair construction, it can apply only to bonds taken-, for those duties on imports and tonnage, which are the subject of the act. From the first law passed on this subject, every act respecting the collection, of those duties, had contained a section giving a preference to the United States, in case of the insolvency of the collectors of them.
The act of 1797, if construed as the United States would construe it,, would extend to those collectors, if there was no other provision in any other act giving a priority to the United States in these cases. As there was such a previous act, it might be supposed, that its repeal by a subsequent law, would create a doubt whether the act of 1797 would comprehend, the case, and therefore, from abundant caution, it might be deemed necessary still to retain the section in the new act, respecting those duties. The general repealing clause of the act of 1799 cannot be construed to repeal, the act of 1797, unless it provides for the cases to which that act extends.
It has also been argued, that the bankrupt law itself affords ground for the opinion, that the United States do not claim a general preference.. (2 U. S. Stat. 36.) The words of the 62d section of that law apply to debts-generally, as secured by prior acts. But as that section was not upon the-subject of preference, but was merely designed to retain the right of the United States in their existing situation, whatever that situation might be,„ the question may well be supposed not to have been investigated at that time, and the expressions of the section were probably not considered with a view to any influence they might have on those rights.
*After maturely considering this doubtful statute, and comparing it with other acts in pari mataría, it is the opinion of the majority of the court, that the preference given to the United States by the-5th section, is not confined to revenue officers and persons accountable for-public money, but extends to debtors generally.
Supposing this distinction not to exist, it is contended, that this priority of the United States cannot take effect in any case where suit has not been instituted ; and in support of this opinion, several decisions of the English judges, with respect to the prerogative of the crown, have been quoted. To this argument, the express words of the act of congress seem to be opposed. The legislature has declared the time when this priority shall have its commencement ; and the court think those words conclusive on the point. The- *236 ■cases certainly show that a bond fide alienation of property, before the right -of priority attaches, will be good, but that does not affect the present case.
From the decisions on this subject, a very ingenious argument was drawn by the counsel who made this point. The bankrupt law, he says, does not bind the king, because he is not named in it; yet it has been adjudged, that the •effects of a bankrupt are placed beyond the reach of the king, by the assignment made under that law, unless they shall have been previously bound. He argues, that according to the understanding of the legislature, as proved by their acts relative to insolvent debtors, and according to the decisions in some of the inferior courts, the bankrupt law would not bind the United •States, although the 62d section had not been inserted. That section, therefore, is only an expression of what would be law without it, and conse■quently, is an immaterial section; as the king, though not bound by the bankrupt law, is bound by the assignment made under it; so, he contended, that the United States, though not bound by the law, are bound by the .assignment.
But the assignment is made under and by the direction of the law ; and a proviso that nothing contained in the law shall affect the right of preference claimed by the United States, is equivalent to a proviso that the ■assignment shall not affect the right of preference claimed by the United States.
the act has attempted to give the United States a preference in the case before the court, it remains to inquire, whether the constitution obstructs its operation. To the general observations made on this ■subject, it will only be observed, that as the court can never be unmindful of the solemn duty imposed on the judicial department, when a claim is supported by an act which conflicts with the constitution, so the court can never be unmindful of its duty to obey laws which are authorized by that instrument. In the case at bar, the preference claimed by the United ■States is not prohibited ; but it has been truly said, that under a constitution ■conferring specific powers, the power contended for must be granted, or it cannot be exercised. It is claimed, under the authority to make all laws which shall be necessary and proper to carry into execution the powers vested by the constitution in the government of the United States, or in any -department or officer thereof. In construing this clause, it would be in•correct, and would produce endless difficulties, if the opinion should be maintained, that no law was authorized which was not indispensably necessary to give effect to a specified power. Where various systems might be .adopted for that purpose, it might be said, with respect to each, that it was not necessary, because the end might be obtained by other means. Congress must possess the choice of means, and must be empowered to use any means which are in fact conducive to the exercise of a power granted by the constitution. The government is to pay the debt of the Union, and must be authorized to use the means which appear to itself most eligible to effect that object. It has, consequently, a right to make remittances, by bills or otherwise, and to take those precautions which will render the transaction safe.
This claim of priority on the part of the United States *will, it has been said, interfere with the right of the state sovereignties, re•specting the dignity of debts, and will defeat the measures they have a right *237 to adopt, to secure themselves against delinquencies on the part of their own revenue officers. But this is an objection to the constitution itself. The mischief suggested, so far as it can really happen, is the necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of congress extends.
As the opinion given in the court below was, that the plaintiffs did not maintain their action, on the whole testimony exhibited, it is necessary to examine that testimony. It appears, that the plaintiffs have proceeded on the transcripts from the books of the treasury, under the idea, that this suit is maintainable under the act of 1797. The court does not mean to sanction that opinion; but as no objection was taken to the testimony, it is understood to have been admitted. It is also understood, that there is no question to be made respecting notice ; but that the existence of the debt is admitted, and the right of the United States to priority of payment is the only real point in the cause.
The majority of this court is of opinion, that the United States are entitled to that priority, and therefore, the judgment of the circuit court is to be reversed, and the cause to be remanded for further proceedings.
Judgment reversed.
Washington, J.
— Although I take no part in the decision of this cause, I feel myself justified by the importance of the question, in declaring the reasons which induced the circuit court of Pennsylvania to pronounce the opinion which is to be re-examined here. In any instance where I am so unfortunate as to differ with this court, I cannot fail to doubt the correctness of my own opinion. But if I cannot feel convinced of the *error, I owe it, in some measure, to myself, and to those who may be injured by the expense and delay to which they have been exposed, to show, at least, that the opinion was not hastily or inconsiderately given.
The question is, have the United States a right, in all cases whatever, to claim a preference of other creditors in the payment of debts. At the circuit court, the counsel for the United States disclaimed all idea of founding this right upon prerogative principles, and yet, if I am not greatly mistaken, the doctrine contended for places this right upon ground, at least as broad as would have been asserted in an English court.
The whole question must turn upon the construction of acts of congress, and particularly that of the 3d of March 1797. The title of the law is, “an act to provide more effectually for the settlement of accounts between the United States and receivers of public money.” The first section describes more specially the persons who are the objects of the law ; points out the particular officer whose duty it shall be to institute suits against those public delinquents thus marked out; declares the rate of interest to be recovered upon balances due to the United States, and imposes a forfeiture of commissions on the delinquent. The 2d section defines the kind of evidence to be admitted on the part of the United States, in the trial of suits in all cases of delinquency. The 3d section gives to the United States, in such actions, a preference of all other suitors in court, by directing the trial of such causes-to take place, at the return-term, upon motion, unless the defendant will make oath that he is entitled to credits which have been submitted to the consideration of the accounting officers of the treasury, and rejected. The 4th *238 ■section takes up the case of the defendant, and declares under what circum■stances he shall be entitled to the benefit of off-sets.
*The 5th section brings us to an important part of the trial, and furnishes a rule to govern the court in the judgment it is to render, in cases where the claim of the United States might, by reason of the insolvency of the debtor, go unsatisfied, unless preferred to that of a private ■citizen. The 6th section is general in its terms, and relates to executions where the defendant or his property is to be found in any district other than that in which the judgment was rendered. This is a concise view of the ■different parts of this act, and I shall now examine more particularly the expressions of the 5th section, taken in connection with those which precede it.
The words are, “ that where any revenue officer, or other person, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, the debt due to the United States shall be first satisfied,” &c. It is conceded, that the words “ or other person ” are broad enough to comprehend every possible case of debts due to the United States, and therefore, a literal interpretation is contended for by those who advocate the interest of the United States. On the other side, a limitation of those expressions is said to be more consonant with the obvious meaning of the legislature, which contemplates those debtors only who are accountable for public money.
Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently, no room is left for construction. But if, from a view of the whole law, or from other laws in pari materia, the evident intention is different from the literal import of the terms employed to express it, in a particular part of the law, that intention should prevail, for that, in fact, is the will of the legislature.
a sect^on ke introduced, which is a stranger to, and unconnected with, the purview of the act, it must nevertheless take effect according to its obvious meaning, independent of all influence from other parts of the law. Nay, if it be a part of the same subject, and either enlarges or restrains the expressions used in other parts of the same act, it must be interpreted according to the import of the words used, if nothing can be gathered from such other parts of the law to change the meaning. But if, in this latter case, general words are used, which import more than seems to have been within the purview of the law, or of the other parts of the law, and those expressions can be restrained by others used in the same law, or in any other upon the same subject, they ought, in my opinion, to be restrained. So, if the literal expressions of the law would lead to absurd, unjust or inconvenient consequences, such a construction should be given as to avoid such consequences, if, from the whole purview of the law, and giving effect to the words used, it may fairly be done. These rules are not merely artificial; they are as clearly founded in plain sense, as they are certainly warranted by the principles of the common law.
The subject intended to be legislated upon is sometimes stated in a preamble, sometimes, in the title to the law, and is, sometimes, I admit, misstated, or not fully stated. The preamble of an act of parliament is said to be a key to the knowledge of it, and to open the intent of the law-makers : and so I say, as to the title of a law- of congress, which being the deliberate *239 .act of those who make the law, is not less to he respected as an expression •of their intention, than if it preceded the enacting clause in the form of a preamble. But neither the title nor preamble can be resorted to, for the purpose of controlling the enacting clauses, except in cases of ambiguity, or where general expressions are used inconsistent or unconnected with the scope and purview of the whole law. .They are to be deemed true, unless ■contradicted by the enacting clauses, and it is fair, in the cases I have stated, to argue from them.
*The object of this law, then, as declared by the title, is to provide for the effectual settlement of debts due to the United States, from receivers of public money. To effect this, suits are directed, the species of •evidence to support the claim on the part of the plaintiff is pointed out, and a speedy trial provided ; on the part of the defendant, a limited right to ■oppose the claim by off-sets is provided, and the claim of the United States is to have a preference of other creditors, where the debtor is unable to satisfy the whole. Here, then, is one entire connected subject, the different provisions of the law constituting the links of the same chain, the members of the same body. It will not, I presume, be denied, that the first three sections of the law apply to those only who are declared by the title to be the objects of its provisions. The 4th section is the first which uses general expressions, without a reference to those who had before been spoken of ; and yet, I think, it will hardly be contended, that this section is not closely and intimately connected with the same subject. When we come to the 5th section, the reference to the first three sections is again resumed, with the addition of the words “ or any other person.” So that, instead of the words “ revenue officers, or other persons accountable for public money,” used in ■the first section, this section uses the words “ revenue officers, or other persons indebted to the United States.”
Now, it is obvious, that these expressions may have precisely the same meaning, so as to comprehend the same persons, although the latter may be construed to include persons not within the meaning of the first section. For persons accountable for public money, are also other persons than revenue officers indebted to the United States ; and the latter may, by a construction conformable to the other parts of the law, means persons accountable for public money ; and by an extended construction, they may comprehend others, who in no sense of the expressions used, can be said to be accountable for public money.
It is, then, to be inquired, is the court bound, by any known rules of law, to give to the words thus used in the 5th section, a meaning extensive enough to comprehend persons never contemplated by the title of the law, and most *sedulously excluded by the first three sections ? Does justice to the public, or convenience to individuals demand it ? Is .such a construction necessary, in order to give effect to any one expression ■used by the legislature ? Shall we violate the manifest intention of the legislature, if we stop short of the point to which we are invited to go, in the construction of this section? To all these questions, I think myself warranted in answering in the negative.
1. As to the first. Do the principles of equity, or of strict justice, discriminate between individuals standing in equalijure, and claiming debts of equal dignity ?
*240 The nature of the debt may well warrant a discrimination; but not so, if the privilege be merely of a personal nature. The sovereign may, in the exercise of his powers, secure to himself this exclusive privilege of being preferred to the citizens, but this is no evidence, that the claim is sanctioned by the principles of immutable justice. If this right is asserted, individuals must submit; but I do not find it in my conscience, to go further-in advancement of the claim, than the words of the law, fairly interpreted, in relation to the whole law, compel me. But I do not think, that congress meant to exercise their power to the extent contended for. First, because in every other section of the law they have declared a different intent; and secondly, because it would not only be productive of the most cruel injustice to individuals, but would tend to destroy, more than any other act I can imagine, all confidence between man and man. The preference claimed is not only unequal in respect to private citizens, but is of a nature against which the most prudent man cannot guard himself. As to public officers, and receivers of public money of all descriptions, they are, or may be known as such ; and any person dealing with them, does it at the peril of being postponed to any debts his debtor may owe to the United States, should he become unfortunate. He acts with his eyes open, and has it in his power to calculate the risk he is willing to run. But if this preference exists in every possible case of contracts between the United States and an individual, *there is no means by which any man can be apprised of his danger in dealing with the same person.
2. Is this broad construction necessary, in order to give effect to the expressions of the law ? I have endeavored to show, that all accountable agents are other persons than revenue officers indebted to the United States.. The words, then, “ other persons,” are satisfied by comprehending all those persons to whom the first section extends.
3. Is this construction rendered necessary, to fulfill the manifest intent of the legislature ? So far from it, that to my mind, it is in direct opposition to an intention plainly expressed by all the other parts of the law. To prove this, I again refer to the title of the law ; to the first three sections, which are in strict conformity with it, and that too, by express words ; and to the fourth section, which is so plainly a part of the same subject, that it cannot be construed to go farther than those which precede it. Is the fifth section a stranger to the others ; unnaturally placed there, without having a connection with the other sections ? If this be the case, I have already admitted, rules of construction strong enough to condemn the opinion I hold. But let. us examine this point.
The object of the first four sections is to enforce by suit, where necessary, the payment of debts due to the United States from a particular class-of debtors. It points out the officer who is to order the suit, declares at what term the cause shall be tried, lays down rules of evidence to be regarded in-support of the action, extends to the defendant the benefit of making offsets, under certain qualifications ; and then most naturally, as I conceive,, comes the fifth section, relating to the judgment which the court is to render, in case a contest should ensue between the United States and individual creditors, on account of inability in the debtor to satisfy the whole. What if an individual creditor should attach the property of the debtor, before the *241 United States had taken steps to recover their debt ? Or if the debtor should assign away his property, or it should be claimed *by assignees, under a commission of bankruptcy ? or the defendant, being an executor, should plead fully administered, except so much as would be sufficient to satisfy judgments, bond debts, or other debts superior in dignity to that of the United States ? This section establishes a plain rule by which the court must proceed in rendering its judgment, whenever those cases occur. What would have signified all the other provisions of the law, unless a rule of decision had been prescribed, in cases where, otherwise, the United States might never obtain the fruit of those steps which their officers were pursuing?
Can a section in a law which professes to afford a remedy in a particular case, by process of law, be said not to belong to the law, when it leads to the point of a judgment, which is the consummation of the proceedings in the case ? I think not; and therefore, I cannot acquiesce in the opinion that the 5th section is unconnected with the other parts of the law.
I have before observed, that the 4th section is the first which uses general expressions, without reference to those which had before been particularly mentioned; but that when we come to the 5th section, the reference is. again taken up, with the addition of those words which produce the difficulty of the case.
Úow, I ask, in the first place, what necessity was there for departing from the mode of expression used in the 4th section, which, for the first time, is general, without particular reference to any of the persons before described. Would it not have been as well, in the 5th as in the 4th section,, to say “ that where any individual becoming indebted to the United States-shall become insolvent,” &c. ? What reason can be assigned for the specification of revenue officers, one class of persons mentioned expressly in the 1st section, intended in the 2d and Sd, by plain words of reference, and clearly meant in the 4th, when it must be admitted that the words used in the 4th section, or the words “ other persons,” in the 5th, would have comprehended revenue officers, if they were broad enough to include every description of persons indebted to the United States? *TJnless they are construed to limit and restrain the generality of the words “ other persons,” they are absolutely without any use or meaning whatever. If the' preceding sections had applied only to revenue officers, then, from necessity,, we must have construed the words “ other persons ” as broad as their natural import would warrant, because, otherwise, they would have been nugatory, and we would have found no rule in the law itself, by which to limit, the generality of the expression.
But when the law professes, in its title, to relate to all accountable agents besides revenue officers, and the first section specifies, amongst these agents, “ revenue officers,” we have a rule by which to restrain the sweeping expressions in the 5th section, viz., “ or other person accountable, or indebted as aforesaid.” This construction renders the law uniform throughout, and consistent with what it professes in every other section.
In confirmation of this construction, the 62d section of the bankrupt law does, in my opinion, deserve attention. If the United States were, at the time that law passed, entitled to a preference in every possible ease, by virtue of the general expressions in the law I have just been considering, what *242 necessity was there for limiting the saving of the right of preference to debts due to the United States, “ as secured or provided by any law heretofore passed.” This mode of expression leads me to conclude, that the legislature supposed, there were some cases where this preference had not been provided for by law. If not, it would certainly have been sufficient to declare, that the bankrupt law should not extend to, or affect, the right of preference to prior satisfaction of debts due the United States.

 United States v. Palmer, 3 Wheat. 631; Smythe v. Fiske, 23 Wall. 380; Ogden v. Strong, 2 Paine 584; Baring v. Erdman, 14 Haz. Pa. Reg. 129; United States v. McArdle, 2 Sawyer 367.

 The Chief Justice, in delivering the opinion, observed as follows: “ I only say for myself, as the point has not been submitted to the court, that it does not appear to me to create a demstmit in the administration of effects, and would require notice, in ■order to hind the executor, or administrator or assignee.”